Good morning, Your Honors. May it please the Court, my name is Joyce Leavitt, and I represent the Petitioner in this case. I'd like to reserve a couple minutes for rebuttal as well. Your Honors, the Sixth Amendment allows any criminal defendant to represent himself in a trial, except for a few limited circumstances. Those circumstances are set out in the Ferretta case as well as the McCaskill case. And in this case, the State court's decision resulted in a decision that was contrary to the Supreme Court, clearly established Supreme Court law, as well as it was an unreasonable application. Therefore, Your Honors, should grant our clients habeas. The question, Your Honor, in this case was not whether the Petitioner was difficult to understand at points. The question was really, why did the trial court revoke his right to represent himself, and was that decision contrary to or an unreasonable application of Supreme Court law? At the trial court level, Your Honors, the trial court sets out a few reasons as to why she is revoking the defendant's Petitioner's right to represent herself, himself. At first, she sets out a standard, which is clearly incorrect, talking about how if I can't understand you or if you are disruptive or delaying tactics. Roberts, please hold the phone for a second. The phone shut off now. Thank you. Go ahead. If I feel your mental state is such or your educational state is such, then I can revoke you. So she sets out three reasons, two of which are contrary to Supreme Court law, that is, mental state, which is contrary to the Godinez case, and a client's educational or ability to represent himself, which is contrary to Ferretta and McCaskill. And then the last reason that she sets out is whether she can understand him. Your Honors, in looking at the procedure at the trial level, it's clear that the district that the trial court does not revoke the Petitioner's right to represent himself because of the language difficulty, but because she doesn't want to deal with him because he's filed in frivolous motions. And the way you get at that is that on May 9th – on May, in 1999, the Petitioner asks to represent himself and the judge allows him to. December 99, the judge is – the client is still representing himself. The case is consolidated with another one, and the judge is allowing the client to represent himself. In January 2000, there's a hearing. That's when the trial court sets out the different issues about maybe I can't understand you. And she also talks about would you like an interpreter? I'm going to get to that in a minute. He demurs. She still allows him to represent himself, Your Honors, until finally he says, I can't do this anymore. I don't have access to the court library or to the library. I give up. She says, I'm making two findings. One, you don't want to represent yourself. Two, I'm having a hard time to understand you. And it's significant at that point that she doesn't say anything about an interpreter. Ten days later, the Petitioner comes back, again asks to represent himself, and she allows him to. And then he proceeds to file, I believe, five motions, a motion to – for severance, just various motions. He comes back in February. He's representing himself. She asks him how he pleads to a new amended information, and he invokes his Fifth Amendment. At that point, she says, I've considered your response. Based on your response here and our previous discussions, I'm considering indicating that you're not capable of representing yourself. Now, at the time that she makes that ruling, she clearly understands what he's saying. And there's no question about an interpreter. She doesn't like that he's invoking his Fifth, that he doesn't know what he's doing. Later – Kennedy, Jr.: Couldn't she have just entered a not guilty plea? Couldn't the court have on his behalf? Kennedy, Jr.: Freedom of answer? Of course. Of course. And at that point, she hasn't even made the complete ruling, but then the public defender goes on and says, well, I've talked to the person who's his co-counsel or standby counsel. He's an errant boy. He doesn't really like it. Please let the defendant know what you're really saying. And at that point, she says, you're doing yourself nothing but a disservice. You're aware of some of the law, not all of the law. Then she says, I have a great difficulty understanding you. And then she says, you bring motions that don't lie. You've refused an interpreter. Therefore, I'm revoking your right. So in looking at how it comes about that she decides to revoke his right to represent himself, it's clear that language is certainly not the issue ultimately that causes her to revoke his right. She bases it on three grounds. The first two grounds, the mental health, as I indicated, and the ill-prepared motions, which is what she really seems to be focusing on, are contrary to Supreme Court law. And the third one, the language one, I'll get into a little bit more. But what the trial – what the district court says when she reviews the record is that while the client is difficult to understand at some point, the trial court says that he was usually able to make himself understood. Now, the State appellate court and the Federal court, both in making their rulings, implicitly, although they – they do not talk about reliance on the mental health component, but both the State court appellate – the appellate court and the district court do seem to include this idea about being ill-prepared. For instance, the Supreme Court – not the Supreme Court, the State appellate court says – talks about how the court and court reporter couldn't understand what he was saying, but he was making rambling statements about unrelated matters. He was filing inappropriate motions. He was causing the court to question its competency. And so the record, you know, supports that he couldn't communicate intelligibly. And then the district court also talks about not only the language issue, and she makes that sufficient. Then she also talks about lack of legal qualifications and says, well, lack of legal qualifications alone may not be sufficient, but the fact that he's not using an interpreter and he's hard to understand makes it reasonable. In both of those opinions, Your Honors, the lack of preparedness and inability to do a good job representing himself is clearly contrary to Farrett itself. So that can't be a basis. So then the only basis left is whether the language difficulty is enough. As the district court says, well, that's not enough alone. And they talk about refusal to – to use an interpreter. And I want to look at that because it seems like the argument that's being made is almost that this is the problem that makes it that this client is unwilling to follow courtroom protocol, or rather that we're unable. And what happens with the interpreter is, again, the client represents himself at many appearances, and it's just one appearance that the trial court on three different points says, well, do you think you could better communicate with an interpreter? And he says, well, no, I've used them before. It's not the right dialect. Later, she says the language by itself was not sufficient. I'm reading here, as characterized by the court of appeal, the trial court revoked Petitioner's pro se status based on its, quote, finding that the inability to communicate intelligibly rendered Petitioner incapable of representing himself and abiding by the rules of procedure and courtroom protocol. Is there some other portion of that decision in which the court says, but I didn't really mean that by itself, I meant something else? Well, Your Honor, I believe when the court talks about communication to effectively or ability to effectively communicate, that included in that is the motions that are being filed. But in addition, the court does say, in her opinion, that the lack of legal qualifications oh, I'm sorry, that the Petitioner language barrier standing alone may not be sufficient. Where are we reading on page, give me the E.R. reference. Your Honor, in the excerpts of record, it's the top of page 127, where it says, Yes, but that doesn't say that it's because his mental condition is taken into consideration, nor that his motions are ill-prepared and bizarre. It says the lack of intelligibility because of his habit of not being able to communicate  when coupled with his refusal to use a translator means that the court and decorum and procedures cannot be followed. Isn't that correct? That's what she's saying. Your Honor, that's correct, what she's saying. But in the next paragraph, she also talks about the lack of legal qualifications alone cannot be a basis, but here the language problems plus that. So what I would say is two things. One, that she, the Court is also looking at the legal qualifications. And number two, I did quickly want to talk about the refusal to use an interpreter. I see I'm almost out of time. Roberts. Thank you, Your Honors. The refusal, it encompasses, refusal encompasses a lot of behavior. In this case, it's one hearing in which the judge asks the client if he would be better served with an interpreter. At three points in that hearing, he says no. She then goes on and still allows him to represent himself until he at that hearing decides that he's not going to do it. And when she makes findings after, she doesn't say anything about a refusal to use an interpreter. And he then, she allows him later to represent himself, and she doesn't say anything about an interpreter. So to later say, well, he's refused, if that were the issue, if the language was truly the only issue here, Your Honors, given that it's the Sixth Amendment right to represent himself, he should have been told, you need an interpreter. She could have appointed one or she could have said it to him. You need an interpreter or you're not going to be able to represent yourself. She doesn't. It's something that comes up at an earlier hearing, not at the time that she revokes his right to do it. Roberts. Thank you, counsel. May it please the Court. Peggy Ruffray, Deputy Attorney General for Respondent. Your Honors, in Savage v. Estelle, this Court held that communicating with a factfinder is the essence of a trial. In this case, the trial court found that the defendant was not able to communicate representing himself, and so denied him his right to represent himself. That was totally consistent with McCaskill v. Wiggins. There's been some speculation here today about the reason why the Court revoked his right to represent himself. We don't really have to engage in that kind of speculation because the California court of appeal already addressed this issue. The same issue was raised in the court of appeal, that it was really that the Court was saying that he wasn't – didn't have enough education or perhaps was questioning his mental confidence. The court of appeal said, we're looking at the whole record, and it's clear to us that the real reason why the court revoked his right to represent himself was because of the language difficulty. If you look at the supplemental excerpts of record that we filed, that permeates the trial court's discussions with this defendant. Again and again, the court has to interrupt and say, what are you saying, or often the court reporter has to interrupt and say, what was that word. Sometimes they're able to figure out what he's trying to say. Sometimes they don't, and the court reporter is reduced to just putting a phonetic spelling of what he's trying to say in quotation marks, and it's never really ever clarified. So for the trial court to allow a person with that level of difficulty to go to the trial and present the case in front of the jury, I'm sure we would have been here arguing on the opposite claim if that had happened. There's no way to ensure that the jurors would have understood what he was saying, which is the essence of the trial. It wouldn't have been practical to try to clarify every single word that he said, and his refusal to use the interpreter was the last straw. I don't think there's really much question that he refused the interpreter. There was quite a bit of discussion about it. He said that he had used interpreters before in his previous cases, and they were usually Mexican and didn't have the same accent or used the same dialect as he did. The court then said, well, can I accommodate you and get a Puerto Rican interpreter who does speak your dialect? He still said no. I don't think the court did attempt to do that three or four times. I don't think that there was any obligation to pursue that any further when he made it clear that he was not going to accept an interpreter. And the court couldn't have simply appointed one and forced him to use an interpreter. When you're representing yourself, you certainly would have to work with an interpreter, and if he was simply refusing to do that, then the presentation of the evidence to the jury would simply have broken down. It just wouldn't have worked. And the – so that's the facts. Again, I urge the Court to actually read through the supplemental excerpts of record that has the two reported hearings where the difficulties are extremely apparent, not just one or two words here and there, but persistence throughout these hearings. He's simply unable to make himself understood. And the law is – our main case that we're relying on is McCaskill v. Wiggins, where the Supreme Court said that your right to self-representation is contingent on your ability to be able and willing to abide by rules of procedure and courtroom protocol. Now, that has been interpreted by both this Court in Savage v. Estelle and in a number of California cases to mean that you don't have to actually be disruptive or disorderly or disrespectful to the court. You also have to be able to represent yourself, and that includes able to communicate, able to speak and communicate your thoughts. In Savage v. Estelle, it was a severe stutter. In that case, he – the defendant actually was able to eventually make himself understood, as you see in the appendix. He just had to have a number of false starts before he eventually got it out. This case is much worse than that, because there was – he never was able to make himself understood, as to some words. Imagine the jurors going back into the deliberation room and saying, well, I thought he said this, and another juror saying, well, I thought he said that, and there was no representation of that evidence, they would simply be sidelined. So I think that under the law of McCaskill v. Wiggins and the facts as set forth in this case, clearly, it was proper for the Court to find that he was not physically able to represent himself. Kennedy, I suppose it's a mixed question. If there's evidence that he couldn't represent himself because of his language difficulties, if there's also evidence that the judge took into consideration his mental ill ability or his lack of preparedness, what's your position? Do we affirm because there is some evidence, or do we reverse because some improper evidence was taken into consideration? Well, again, our first response to that question is that the California court of appeal already found that the basis was the defendant's language difficulties and not the other aspects in light of the entire record. But even if the Court could under EDPA, all we do is take a look at the last reason decision and see if it's an unreasonable application of the facts. Correct. I think that would actually be a factual finding. The appellate court looked at the record and made a finding that the reason for the Court's decision was based on the language difficulties and not his mental competence or inability to represent himself well. But to answer your question, if somehow that presumption of correctness were rebutted or if the Court found that that wasn't reasonable in light of the entire record, I think the Court's case in Van Linn v. Farman suggests that when there is some improper basis for revoking the right to represent yourself and also an entirely proper basis, then there's no constitutional violation. I think that would be the case here because clearly his inability to communicate was extreme and severe. The Court could not let him go forward. I also think it could be said that what the trial court was doing when she was discussing his motions that were inappropriate and so forth was possibly trying to talk him out of representing himself, which I don't think there's any problem with doing that. One thing is a language inability in preliminary motions, and another thing is language inability at trial. Absolutely. And what the judge said was, this is a quote, "...the Court is having significant difficulty in understanding Mr. Rodriguez and has since his first appearances, and it is evident also by the court reporter having difficulty in attempting to secure a record." A few times the court reporter simply said, I can't make a record here. The judge said, I have a great deal of difficulty understanding you. I think a jury will also. Now, that is also a factual finding. The trial court made a finding after personally seeing the defendant a number of times, seeing how well he was able to communicate, that a jury was not going to be able to understand him. I think the reason the judge didn't revoke his right to representation right away is because she was trying to see if they could work something out. If he would accept a court reporter, or if perhaps it would improve. In fact, his ability to communicate, it appeared to get worse, and he even said that when he was tired, he didn't speak as clearly, or when he felt that he was under duress, he didn't speak as clearly. Certainly, if this had actually gone to trial and he was trying to defend himself against six charges, I believe seven charges, he would have been even more fatigued and under even more duress. So that was also the situation in Savage v. Estelle, where the defendant said his stutter got worse when he was under duress, and the court relied on that as a factor in considering that there was no constitutional violation, and that the trial court really couldn't let this person represent themself at trial. The trial court tried to accommodate him in whatever way possible by an interpreter that spoke his specific dialect. He refused. Once that happened, the court completely complied with McCaskill-Hurst's Wiggins by saying, I don't think you can represent yourself and appointing a lawyer, unless there's anything else. Roberts. Thank you, counsel. We'll give you a couple minutes for rebuttal. Your Honor, in response to Judge Bea's question about whether it's a mixed question of why his right was revoked, the Van Linn case, I think, actually helps the Petitioner here, because in the Van Linn case, there's two possible reasons for revoking his right to represent himself, the client, the woman, actually. One is because her request was untimely, and another is because the judge is concerned that she won't be able to do a good job. And, in fact, the judge in that case says, this is a late, you know, you're asking me to do this at a late time, and raises that. But what the Ninth Circuit does is they say, even though there's two reasons and one might be a valid reason, you have to look at what the court did. And in that case, the court, even though the court said this is a late, you know, a late request. But in this case, we're bound by the factual determination of the last reasoned opinion of the State court, the court of appeal, right? Well, unless it's an unreasonable application. Kennedy, do you have a comment on the application of facts under AEDPA? Okay. I guess I would say two things, Your Honor. One is that the facts, as the State court says it, again, I think are unclear, because it talks about the ability to communicate and it doesn't necessarily limit itself to language. The other thing I would say is, well, actually, this may be the same problem. In the Probieska case, the court says, we're revoking the defendant's right to represent himself because he can't prepare, because he doesn't have access to the library, but he also was obstructionist. And then the Ninth Circuit looks and says, well, no, actually, he wasn't obstructionist until you denied him the right to revoke, you know, you revoked his right to represent himself. So the court did still look at the record to see whether the stated reasons were correct. Your Honors, in Savage v. Estelle, in that case it was clear that the stutter was the problem. An interpreter wouldn't help. And so in that case, they required that the defendant have co-counsel or – but in that case, the judge still allowed Mr. Savage to file his own motions, to talk to the investigator on his own, and there's even a footnote where the court says that they're trying to accommodate his right to represent himself and allow him to have some control, while still allowing communication to be an issue. In McCaskill as well, even though that's the stated case, there's co-counsel and the client is allowed to make arguments on his own behalf. In this case, the judge doesn't like what's happening, and so she revokes his right altogether. Given, Your Honors, that the Sixth Amendment right to represent yourself is so core to criminal defense, the Court in this case, had the issue truly been the language difficulty, should have tried to accommodate, should have appointed an interpreter, should have allowed the defendant to still file motions or done something. The Court didn't do that, and its decision was contrary to the Supreme Court law, so the habeas should be granted. Thank you, counsel. Thank you, Your Honors. The case has now been submitted. Counsel here for Caesars World v. Millennium. I'm sorry, Yellow Cab is next. Is everybody here for Yellow Cab v. Yellow Cab? Thanks. I know we had some delays. Are both counsel here for Yellow Cab? Okay. Good.
judges: B. Fletcher, Thomas, Bea